JAMES F. McGEE *vs.* BOSTON CORDAGE COMPANY.

Suffolk. March 9. — June 20, 1885. W. ALLEN, COLBURN, & HOLMES, JJ., absent.

A person employed to make such ordinary repairs of a machine as its use requires to keep it in order from day to day is a fellow servant with those employed to run the machine; and, if the master employs competent servants to make such repairs, and supplies them with suitable means, he has performed his duty to those employed in running the machine.

TORT, for personal injuries sustained by the plaintiff while in the defendant's employ. Trial in the Superior Court, before *Barker*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiff testified that, in August, 1882, when fifteen years old, in pursuance of an arrangement made by his mother with one Cox, one of the defendant's foremen, he entered the defendant's service. He was first set to work to open and clean hemp, in which work no machinery was used. After working in that way about ten days, he was put upon drawing-machines. He, and a young man who had been four years in the defendant's employ, were set to run four of these machines, each of which was twelve or fifteen feet long, about three feet wide, and four feet and a half high; each had a revolving chain which passed over a drum at either end, being flat while passing over the machine and hanging loose while passing underneath. There were iron cross-bars, about seven eighths of an inch thick, extending from one side of the chain to the other, through which heckle-pins were driven, extending outward through the bars about three and three fourths inches, through which the hemp passed from the end at which it entered out to the spout at the other end, whence it was carried through the floor to the room below, and there placed in boxes; the bars were fastened at each end to the revolving chain. The pins or needles were designed to be straight, and of equal distance from one another, so that, as the hemp passed through, it issued in rolls or ribbons of equal size. The sides of the machine were not guarded by a board or curtain, but, at the bottom, the revolving chain was left exposed, the side of the chain when underneath being about

four inches inside of a line flush with the outside of the frame of the machine, the heckle-pins pointing downward when at the bottom, and upward when on the top, of the machine. There was evidence tending to show that, when the heckle-pins got out of order, they were usually repaired, sometimes in the daytime and sometimes at night or on Sundays, by the foreman who had charge of the machines and employees. The repairing was done by driving out the old pin, and putting in a new one, if necessary, or by straightening the crooked pins.

A witness testified that the machines were stopped sometimes by imperfections in the hemp, and sometimes by imperfections in the machinery; that sometimes the pins got bent, in which case the hemp would become entangled and be carried over the drum, and so underneath, when it would be necessary to clear it from the pins; and one witness, called as an expert, testified that, if a pin were bent in a certain way, which was shown to him by an illustration, a proper way would be to stop the machine and send for a machinist.

The plaintiff testified, that, while at work at these machines on an afternoon in the month of December, 1882, the hemp became entangled, and passed over the drum and adhered to the teeth underneath; that he stooped down, and, with his right hand, pulled the hemp off as well as he could, while with his left hand he attempted to knock off the bunch that adhered to the pins; that, in doing this, his left hand was caught and carried over the drum, and crushed; that he first stopped the machine, and took off what he could from the top; but, finding that he could not disconnect what adhered to the pins from the bottom while the machine was stopped, he started the machine again. There was also evidence tending to show that the plaintiff's hand remained confined between the drum and the chain for ten or fifteen minutes. His companion, seeing him caught, stopped the machine, but did not throw off the gear, nor was it thrown off until a few minutes afterwards, when the foreman came from below and threw it off.

The plaintiff further testified, that he had never had any experience in the operation of machinery until he went to work for the defendant; that he had never been instructed in respect of the danger of any machinery, nor told how to clear these

machines, or to do his work, either by the young man employed on the machines with him, or by any other person, while he was in the defendant's employ, and was not aware of the danger that he incurred in clearing the machine in the way in which he was trying to clear it; and that the difficulty arose from the pins being out of order and crooked. There was, however, evidence introduced by the defendant tending to show that the plaintiff had been cautioned; and that he had thoroughly learned the operation of the machines, and had very often cleared them without accident, when fouled.

The plaintiff's mother testified, that, before the plaintiff went to work for the defendant, she saw Cox, and arranged with him for the employment of her son by the defendant; that it was distinctly understood between her and Cox that the plaintiff was not to be set to work upon machinery; that she never consented that he should be so employed, and did not know, until some time after, that he was at work upon machinery; and that she never made any other bargain in respect to her son's employment than with Cox. The defendant introduced evidence tending to contradict her statement.

At the close of the charge, the plaintiff requested the judge to instruct the jury, " that persons charged with keeping the machinery in repair are not the fellow workmen of the plaintiff, but are the agents of the defendant, charged with the execution of their duty to the plaintiff." In answer to a question by the judge, the plaintiff's counsel stated that the only materiality of the request in this case was with reference to the teeth of the machine. The judge declined to give this instruction; and instructed the jury as follows: " For the purposes of this case, the persons charged with keeping the machinery in repair, if the repairs that they are charged with are simply the replacing of the parts of the machine or straightening the parts of the machine which may have got out of shape by use, if those repairs are to be made from time to time in a mill and when a machine is in place, would be the fellow workmen of a person employed upon the machine, although, if the machine is so out of repair as to require the reconstruction of its parts, the rule is different, and, in that case, the persons whose duty it would be to see to such reconstruction would not be the fellow servants of the

person employed upon the machine, the risk of whose negligence the employee assumes in taking the employment."

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*S. J. Thomas & J. B. F. Thomas*, for the plaintiff.

*N. Morse & H. G. Allen*, for the defendant.

FIELD, J.   The exceptions describe a machine of such a kind that the fact that it became clogged with the hemp was not necessarily evidence of negligence on the part of anybody.   No evidence is recited in the exceptions that the machine was not a good one of its kind, and in good order up to the time when the " hemp became entangled, and passed over the drum and adhered to the teeth underneath."   In the ordinary use of the machine, the heckle-pins would get out of order, and it does not appear that the pins were actually out of order when the plaintiff began work with the machine on the afternoon of the day of the accident, or at any time thereafter, until the hemp became entangled and was carried over the drum.   The exceptions therefore fail to show that the instruction requested at the close of the charge was applicable to any evidence in the case.   But, assuming that some instructions on the subject were necessary or appropriate, the instruction requested was too broad.  , While it was the duty of the defendant to furnish suitable machinery, and to keep it in proper repair, the making of such ordinary repairs as the use of the machine required to keep it in order from day to day may be entrusted to servants; and, if the master employs competent servants for that purpose, and supplies them with suitable means, the master performs his duty, and such servants are fellow servants with those employed to use the machine.   *Johnson* v. *Boston Tow-Boat Co.* 135 Mass. 209.

The instruction given, as applied to the evidence, was substantially a correct statement of the law.

*Exceptions overruled.*